UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BESTWAY INFLATABLES & MATERIAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> JOHN/JANE DOE, <br><br> Defendants. | Case No. 21-cv-05119-PJH <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 30 |

Plaintiff's motion for default judgment came on for hearing before this court on January 6, 2021. Plaintiff appeared through its counsel, Steven A. Caloiaro. Defendants did not appear. Having read the papers filed by plaintiff and carefully considered its arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiff's motion, for the following reasons.

**I.   BACKGROUND**

    **A.   Complaint Allegations**

        **1.   Bestway and its Marks**

Bestway Inflatables & Material Corp. ("Bestway") is a consumer product manufacturer. Dkt. 6-4 ¶ 3-4. It offers over 1,000 products in four primary product lines: above-ground pools and portable spas, recreation products, sporting goods, and camping products. Id. Bestway operates globally, including all over the United States. Id. Demand for Bestway swimming pools has been high during the COVID-19 pandemic, as many consumers are forced to stay home, while supply for the products has been low. Id., ¶ 13.

Bestway owns over 80 trademarks, many of which are registered with the United States Patent and Trademark Office. Id., ¶ 8. This lawsuit involves 20 of those registered trademarks, as well as six common law trademarks.

Bestway promotes its products through several channels, including its own website, www.bestwaycorp.us. Dkt. 6-4 ¶ 6. According to Bestway, the Bestway brand is well known and famous to customers and potential customers for high quality products. Id., ¶¶ 7, 10. The Bestway trademarks serve as an indicator of the origin and source of the goods sold and provided by Bestway. Id.

### 2. Defendants and the Infringing Sites

Defendants John/Jane Doe 1-10 are only identified in this lawsuit by the nine email addresses used: customerservice660233@gmail.com, bestway-outlet.store@superprivacyservice.com, apuninod1984@gmx.com, miaowenshi054676@hotmail.com, teodo.siefk@gmx.com, atvagrenvnxvc@sina.com, julleak@gmx.com, bestwayusa.store@superprivacyservice.com, and bestwaypools.store@superprivacyservice.com. Dkt. 22 at 4.

Defendants set up, established, and/or operate bestway-outlet.store, bestwaypools.vip, bestwayusa.store, and bestwaypools.store ("Infringing Sites"). Dkt. 22 at 1. The Infringing Sites purported to sell genuine Bestway products (primarily above-ground swimming pools) by displaying images of authentic copyrighted Bestway products at deeply discounted prices, some of which are lower than the actual cost to manufacture the goods. Dkt. 1 at ¶¶ 22-23. In most instances, the images were the same images that appear on Bestway's own ecommerce site. Id. Defendants appeared to be taking advantage of the high demand and low supply of above-ground swimming pools caused by the COVID-19 pandemic.

Defendants' conduct caused confusion in the market. For example, a consumer brought one of the Infringing Sites to Bestway's attention via Bestway's social media. Dkt. 6-4 ¶¶ 11-12. On June 30, 2021, one consumer posted a message on Bestway's Facebook page stating that a "lot of your legitimate customers are being scammed out of

money thinking it's really your online store." Id.  The consumer pointed out that the "website looks legit until you notice the prices and the checkout only allows PayPal." Id. While it appears that this consumer determined the site was not a legitimate Bestway site, it remained highly likely that other unsuspecting customers could fall victim to the defendants' illegal schemes.

Given Bestway's past experience with similar websites, as well as the impossibly low prices, it is likely that customers did not receive any product at all in return for their purchase on the Infringing Sites. Instead, once a customer provides payment but fails to receive a product, the unhappy consumer, falsely believing that Bestway is associated with the website, will demand a refund or otherwise seek the good from Bestway.  Dkt. 6-4 ¶ 16.  This same pattern has occurred in the past, and Bestway has been forced to deal with the conduct.  See Dkt 6-5, Permanent Injunction, Default Judgment, and Order Releasing Funds entered on January 7, 2021 in Bestway v. Does 1-10, E.D. Mich. Case No. 20-cv-12002-MFL-EAS finding among other things that "Defendants' conduct seems to have been an attempt to take advantage of the COVID-19 pandemic by offering above-ground pools and other aquatic devices that were in short supply" and that "Defendants do not appear to have given anything of value to the customers in exchange for the consumers' payments.").

### B.     Relevant Procedural History

On July 1, 2021, Bestway filed the complaint to initiate this lawsuit.  Dkt. 1.  The complaint named "John/Jane Doe 1-10" as defendants.  The next day, July 2, 2021, Bestway filed an ex parte application for a temporary restraining order ("TRO").  Dkt. 6. The court denied Bestway's request to proceed ex parte, but it required the company to serve process by sending copies of the papers to the email addresses connected to the websites and PayPal accounts involved in the alleged wrongdoing.  Dkt. 7.  The court subsequently issued a TRO (1) prohibiting the Doe defendants from continuing to use Bestway's trademarks, (2) requiring the Doe defendants and web registrar to take down the offending websites, (3) freezing the PayPal accounts associated with the websites

1  and email addresses, and (4) permitting Bestway to engage in immediate discovery into
2  the identities of the Doe defendants.  Dkt. 14.
3  　　　　On July 14, 2021, Bestway requested that the court amend the TRO to include
4  additional offending websites.  Dkt. 17.  The court granted the company's request and
5  issued an amended order.  Dkt. 18.
6  　　　　On July 23, 2021, following another hearing at which defendants did not appear,
7  the court granted plaintiff's motion for a preliminary injunction.  Dkt. 22.
8  　　　　Plaintiff served process as well as copies of all papers in the action by sending
9  emails to the addresses connected to the websites and PayPal accounts involved in the
10  alleged wrongdoing.  Dkt. 26; see also Fed. R. Civ. P. 4(f)(3).
11  　　　　Plaintiff requested entry of default on October 19, 2021 (Dkt. 27), and the clerk
12  entered default on October 21, 2021 (Dkt. 29).  Plaintiff then filed the instant motion for
13  default on November 22, 2021.  Dkt. 30.  Defendants did not appear.  Plaintiff voluntarily
14  withdrew the claim for common law trademark infringement and unfair competition after
15  the hearing.  Dkt. 33.

**II.　　DISCUSSION**

　　**A.　　Jurisdiction and Service of Process**

　　　　**1.　　Subject Matter Jurisdiction and Personal Jurisdiction**

19  　　　　Courts have a duty to examine both subject matter and personal jurisdiction when
20  default judgment is sought against a non-appearing party.  In re Tuli, 172 F.3d 707, 712
21  (9th Cir. 1999).  Here, the court may exercise subject matter jurisdiction because of the
22  federal questions presented in the complaint.  Dkt. 1 at ¶¶ 30-54; 15 U.S.C. § 1114, 15
23  U.S.C. § 1125(a), 15 U.S.C. § 1125(d).
24  　　　　The court may find nationwide personal jurisdiction over the Doe defendants if
25  "three requirements are met.  First, the claim against the defendant must arise under
26  federal law. . . .  Second, the defendant must not be subject to the personal jurisdiction of
27  any state court of general jurisdiction.  Third, the federal court's exercise of personal
28  jurisdiction must comport with due process."  Holland Am. Line Inc. v. Wartsila N. Am.,

Inc., 485 F.3d 450, 461 (9th Cir. 2007) (citations omitted); see Fed. R. Civ. P. 4(k)(2).

Here, the first requirement is met because Bestway's trademark claims arise under federal law. As to the second requirement, "the test for general jurisdiction asks whether a corporation is essentially 'at home' in the forum state." Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1021 (9th Cir. 2017) (citing Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)). The complaint allegations, which the court accepts as true, indicate that the Doe defendants are not "at home" in any state. See Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). It is unclear where their Internet-based business is physically located, and there is no indication that the scheme specifically targeted residents of California or any other particular state. See Williams, 851 F.3d at 1020-22 (holding that company incorporated and with its principal place of business in Japan, with no offices or employees in California, and with the entire U.S. market accounting for 17% of global sales is not "at home" in California for purposes of general jurisdiction). Therefore, defendants are not subject to the personal jurisdiction of any state court of general jurisdiction.

The third requirement, due process, has several elements. Defendants must have "purposefully availed" themselves of the privileges of conducting activities in the forum or "purposefully directed" their activities toward the forum; Bestway's claims must arise out of or result from defendants' forum-related activities; and the exercise of jurisdiction must be reasonable. See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154-60 (9th Cir. 2006), overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc). For purposes of nationwide personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2), the "federal long-arm statute," the relevant forum is the entire U.S. Pebble Beach Co., 453 F.3d at 1154-55, 1158-60.

Here, Doe defendants purposefully directed and expressly aimed their activities

1    toward the U.S.  As described in the complaint, Doe defendants utilized for their websites
2    a website registrar (Dynadot, LLC located in San Mateo, CA) and DNS hosting servers
3    (operated by Cloudflare, Inc., headquartered in San Francisco, CA) that are both located
4    in this District.  Dkt. 1 at ¶ 6.  Doe defendants not only contracted with a registrar and
5    DNS host located in this forum, they marketed their goods to customers located in this
6    forum and in the United States, purposefully availing themselves of the benefits and
7    protections of the forum.  Dkt. 1 at ¶ 7; see Schwarzenegger v. Fred Martin Motor Co.,
8    374 F.3d 797, 802 (9th Cir. 2004) (explaining that suits "sounding in tort" often use
9    purposeful direction rather than purposeful availment).  Bestway's claims arise directly
10   from those minimum contacts with the U.S.  And finally, the quality of defendants'
11   minimum contacts and their close nexus to Bestway's claims demonstrate that exercising
12   jurisdiction is reasonable.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480
13   (1985) (explaining that personal jurisdiction is reasonable where "the quality and nature
14   of [defendant's] relationship to the company in [the forum state] can in no sense be
15   viewed as random, fortuitous, or attenuated" (internal quotation marks and citations
16   omitted)).  Accordingly, the court may exercise personal jurisdiction, consistent with due
17   process, over Doe defendants under Rule 4(k)(2).

### 2. Service of Process

19   The court must assess whether the defendant against whom default judgment is
20   sought was properly served with notice of the action.  See Penpower Tech. Ltd. v. S.P.C.
21   Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008).
22   Service on foreign defendants is governed by Rule 4(f).  The court approved
23   alternative service on the Doe defendants given the lack of information regarding their
24   identities and physical locations.  Dkt. 14 at 5; see Fed. R. Civ. P. 4(f)(3) (authorizing
25   service "at a place not within any judicial district of the United States . . . by other means
26   not prohibited by international agreement, as the court orders").  Specifically, the court
27   approved service via electronic mail.  Bestway filed proof of service via electronic mail to
28   the Doe defendants, with Email Delivery Failure notification messages only coming back

6

for two of the addresses.  Dkt. 10.  The court concludes that service of process was adequate.

### B. Default Judgment

After entry of default, the court may grant default judgment on the merits of the case.  Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a discretionary one," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), guided by the following factors:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Here, the Eitel factors weigh in favor of granting default judgment.

#### 1. Possibility of Prejudice to Plaintiff

The first factor considers whether the plaintiff will suffer prejudice, such as being left without a legal remedy, if the Court declines to enter default judgment.  Here, because the Doe defendants did not respond to Bestway's complaint, Bestway's only recourse for its claims of trademark infringement is default judgment.  See, e.g., Fudy Printing Co., Ltd. v. Aliphcom, Inc., No. 17-cv-03863-JSC, 2019 WL 2180221, at *3 (N.D. Cal. Mar. 7, 2019); Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1054-55 (N.D. Cal. 2010).  Therefore, this factor weighs in favor of default judgment.

#### 2. Merits of Plaintiff's Claims & Sufficiency of Complaint

The second and third factors, "often analyzed together," require the plaintiff "to plead facts sufficient to establish and succeed upon its claims." Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010); Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010).  After entry of default, the factual allegations in the complaint related to liability are accepted as true and deemed admitted. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  "However, it follows

from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). "The district court is not required to make detailed findings of fact." Fair Hous. of Marin, 285 F.3d at 906.

Bestway seeks default judgment on its trademark infringement claims and submits screenshots comparing defendants' offending websites and plaintiff's own marketing images. Dkt. 30.

### a. Trademark Infringement

The elements of a claim for trademark infringement are: (1) the plaintiff has a protectable ownership interest in a valid mark; and (2) the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive consumers." Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006) (internal quotation marks and citation omitted); see 15 U.S.C. § 1114(a).

"Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration.  When proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met." Pom Wonderful LLC v. Hubbard, 775 F.3d 1118, 1124 (9th Cir. 2014) (citation omitted). Bestway meets the first element by submitting evidence that the trademarks are registered. Dkt. 30-1.

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark." KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 608 (9th Cir. 2005). Likelihood of confusion "generally rel[ies] on an eight-factor test ...: 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other

8

1  markets." Id. But "[t]he factors should not be rigidly weighed; . . . [they] are intended to
2  guide the court in assessing the basic question of likelihood of confusion." Dreamwerks
3  Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1993).
4        Here, accepting the complaint's factual allegations as true, a reasonably prudent
5  consumer would likely be confused by defendants' websites. Indeed, defendants'
6  primary objective appears to be causing confusion by mirroring Bestway's legitimate
7  marketing materials, including logos and product images. Bestway identifies from the
8  Infringing websites some 20 copies of Bestway's registered trademarks. And the
9  Infringing sites caused actual confusion in the market, where one consumer posted on
10 Bestway's Facebook page that the Infringing Site appeared "legit" at first and was
11 scamming customers. Dkt. 6-4 ¶ 11-12. Thus, Bestway meets the confusion element for
12 the marks. And accordingly, Bestway's claim for trademark infringement satisfies the
13 second and third Eitel factors as sufficient on the merits.

### b.  False Designation of Origin

15       Bestway styles its second cause of action "false designation of origin and false or
16 misleading description of fact." Dkt. 1 at 15. The elements of false designation of origin
17 are similar to trademark infringement. See Brookfield Commc'ns, Inc. v. W. Coast. Ent.
18 Corp., 174 F.3d 1036, 1046 nn.6 & 8 (9th Cir. 1999); Int'l Order of Job's Daughters v.
19 Lindeburg & Co., 633 F.2d 912, 917 (9th Cir. 1980). Therefore, courts have treated them
20 as claims that rise and fall together. Freecycle Network, 505 F.3d at 902-04; Vinh-Sanh
21 Trading Corp. v. SFTC, Inc., No. 19-cv-04315-CRB, 2021 WL 3037706, at *8 (N.D. Cal.
22 July 19, 2021); Luxul Tech., 78 F. Supp. 3d at 1170; Spy Optic, Inc. v. Alibaba.Com, Inc.,
23 163 F. Supp. 3d 755, 766 n.3 (C.D. Cal. 2015). Because Bestway's claim of trademark
24 infringement is adequate for purposes of the second and third Eitel factors, so too for its
25 claim of false designation of origin.

### c.  Cyberpiracy

27       The defendants used multiple domain names that were confusingly similar to
28 Bestway's distinctive marks (e.g., bestway-outlet.store, bestwaypools.vip,

bestwayusa.store, and bestwaypools.store), and they did so "with bad faith intent to profit from [those] mark[s]." DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1219 (9th Cir. 2010). This constituted cybersquatting. See 15 U.S.C. § 1125(d)(1)(A). Therefore, the claim of cybersquatting satisfies the second and third Eitel factors as sufficient on the merits.

### 3. Money at Stake

The fourth factor considers the amount of money at stake in relation to the seriousness of the defendant's conduct. Eitel, 782 F.2d at 1471-72. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." Tech. LED Intellectual Prop., LLC v. Revogi, LLC, No. 18-CV-03827-JSC, 2019 WL 2716610, at *4 (N.D. Cal. June 27, 2019) (citation omitted). "Conversely, default judgment may be appropriate where it is tailored to the defendant's specific misconduct." Id. (internal quotation marks and citation omitted). Unlike liability, the court need not accept as true complaint allegations related to damages. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).

Here, Bestway seeks $20,000,000 in damages: $1,000,000 for each of the 20 trademark infringements, which amounts to half of the maximum potential statutory award. While the requested sum is large, it consists entirely of statutory damages. 15 U.S.C. § 1117(c)(2) (authorizing up to $2,000,000 per mark for willful use of counterfeit mark). The amount of money at stake is tailored—by Congress—to the underlying misconduct, and further trimmed by half by Bestway. Thus, the sum of money at stake is appropriate and weighs in favor of granting default judgment.

### 4. Possibility of a Dispute Concerning Material Facts

There is no indication that the material facts are in dispute. The well-pleaded allegations in the complaint as to liability are deemed admitted. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). Bestway's claims are only strengthened by its proffer of screenshots demonstrating the copied materials used by defendants. Dkt. 30 at 10-12. In the absence of any likely factual disputes, this factor weighs in favor of default judgment.

### 5. Excusable Neglect

"This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Defendants were properly served, by email, with the summons, complaint, and papers related to Bestway's preliminary injunction. Dkt. 10, 26. The court additionally froze defendants' PayPal accounts, increasing the likelihood that defendants were aware of the lawsuit. Dkt. 14 at 4. Therefore, this factor weighs in favor of default judgment.

### 6. Strong Policy Favoring Decisions on the Merits

Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. Thus, the seventh Eitel factor, by definition, weighs against entering default judgment. Here, "Defendant's failure to answer Plaintiffs' complaint makes a decision on the merits impractical, if not impossible," making default judgment appropriate notwithstanding the policy against it. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

\* \* \*

In sum, six of the seven Eitel factors weigh in favor of entering default judgment.

### C. Remedies

Bestway seeks both monetary relief (statutory damages) and injunctive relief under the Lanham Act.

#### 1. Damages

The court may award statutory damages between $1,000 and $200,000 for each trademark infringement, or up to $2,000,000 for willful violations, "as the court considers just." 15 U.S.C. § 1117(c).

Bestway alleges willful infringement of 20 trademarks and seeks $1,000,000 in statutory damages for each. Because willfulness relates to the scope of liability, Bestway's plausible allegations showing defendants' conduct was willful are deemed

11

1  admitted. See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir.
2  2008). Thus, the requested damages are half the maximum that the court may award for
3  a willful violation. See 15 U.S.C. § 1117(c)(2). The request accords with the relief
4  demanded in the pleadings such that Doe defendants are fairly on notice of their potential
5  liability. Fed. R. Civ. P. 54(c); see In re Ferrell, 539 F.3d 1186, 1192-93 (9th Cir. 2008).

6  The court has discretion to award statutory damages between the minimum and
7  maximum, so long as they are sufficient to deter future trademark infringement. Playboy
8  Enters., Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1274-75 (9th Cir. 1982); see
9  Dream Games of Ariz., Inc. v. PC Onsite, 561 F.3d 983, 992 (9th Cir. 2009) (explaining,
10 in related context of copyright infringement, that "statutory damages further
11 compensatory and punitive purposes"). "In determining the appropriate amount of
12 statutory damages to award on default judgment, courts in this district have considered
13 whether the amount of damages requested bears a plausible relationship to Plaintiff's
14 actual damages." Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014)
15 (internal quotation marks and citations omitted). "While a plaintiff in a trademark or
16 copyright infringement suit is entitled to damages that will serve as a deterrent, it is not
17 entitled to a windfall." Id. Where a plaintiff cannot reasonably estimate actual damages,
18 and especially where they show only a few sales related to the counterfeit mark, courts
19 are disinclined to award the maximum statutory damages at the risk of a windfall. See id.
20 at 1103 (one sale); Adobe Sys., Inc. v. Tilley, No. C 09-1085 PJH, 2010 WL 309249, at *4
21 (N.D. Cal. Jan. 19, 2010) (one sale); Microsoft Corp. v. Ricketts, No. C 06–06712 WHA,
22 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2005) (three sales).

23 Given the lack of participation in the case by the Doe defendants, Bestway is
24 unable to provide evidentiary support regarding the profits they reaped. The company
25 seeks $20,000,000, half of the total amount of statutory damages available. This reflects
26 the plausible harm defendants' Infringing Sites inflicted on Bestway in the form of lost
27 goodwill, and such an award is sufficient to deter the Doe defendants' willful conduct
28 without creating a windfall for Bestway. The court concludes that an award of

$20,000,000 in damages ($1,000,000 per violated trademark) is appropriate.

### 2. Permanent Injunctive Relief

The court may order permanent injunctive relief "to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). A plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

As to irreparable injury, the Lanham Act provides:

> A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction....

15 U.S.C. § 1116(a). Thus, the statute creates two tracks to a rebuttable presumption of irreparable harm, one for purposes of a permanent injunction and the other for purposes of a preliminary injunction.

Bestway requests that the injunction previously ordered by the court on a preliminary basis be converted into a permanent injunction. The relevant contents of that injunction are as follows:

> Defendants and each of their agents, servants, employees, attorneys, and any other persons who are in active concert or participation with any of them are prohibited from:
> a. Using Bestway's trademarks, including but not limited to any of the trademarks identified below, in connection with the production, sale, importation, offering for sale, or advertising of any products:
>     i. Registered Marks:
>         1. Bestway – Reg. No. 5994966

13

    2. Bestway – Reg. No. 5702452
    3. Bestway – Reg. No. 2748177
    4. Blobzter – Reg. No. 5414243
    5. Chemguard – Reg. No. 5371558
    6. Coolerz – Reg. No. 5095945
    7. Fast Set – Reg. No. 3442181
    8. Fast Set – Reg. No. 2743728
    9. Fill N' Fun – Reg. No. 76542652
    10. Flowclear – Reg. No. 5457592
    11. Freeze Shield – Reg. No. 6186013
    12. H2O Go! – Reg. No. 4940366
    13. H2O Go – Reg. No. 4741874
    14. Hydrium – Reg. No. 6064260
    15. Hydro Force – Reg. No. 2967876
    16. Power Steel – Reg. No. 4827864
    17. Sidewinder – Reg. No. 6064215
    18. Steel Pro – Reg. No. 3006426
    19. Steel Pro Max – Reg. No. 5628831
    20. Swimfinity – Reg. No. 6169733
    [ ]

b. Engaging in any action to pass off non-genuine Bestway products or product offerings as genuine Bestway products.

c. Engaging in further actions to interfere with Bestway's rights in its marks or in damaging Bestway's goodwill or reputation.

d. Continuing to operate bestway-outlet.store, bestwaypools.vip, bestwayusa.store, bestwaypools.store, and any similar site(s) containing content that infringes on Bestway's trademark rights. Defendants shall immediately and permanently take down any website, including but not limited to bestway-outlet.store, bestwaypools.vip, bestwayusa.store, and bestwaypools.store that contains any unlawful depiction, description, or advertisement of product that infringes the intellectual property owned by Bestway and asserted in the present action. The registrar, Dynadot, LLC, and any subsequent registrar, of bestway-outlet.store, bestwaypools.vip, bestwayusa.store, and bestwaypools.store, and any similar website that contains any unlawful use of Bestway's trademarks including any unlawful depiction, description, or advertisement of product that infringes on the intellectual property owned by Bestway, is ordered to immediately lock the domain, remove all existing Domain Name Server (DNS) entries, and prevent the transfer of the domain name until further order of this Court. Dynadot, LLC is prohibited from registering any websites containing the word "bestway" in the domain name until further order of this Court.

<u>See</u> Dkt. 22 at 2-3.[1]

---

[1] The court omits from this list the common law marks given plaintiff's stated intent to dismiss the fourth cause of action for common law trademark infringement and unfair competition. Dkt. 30 at 16.

14

A permanent injunction is appropriate.  Bestway is presumed to have suffered irreparable harm, for which there is no adequate legal remedy.  See 15 U.S.C. § 1116(a) (presumption applies upon a finding of trademark infringement, dilution, or cybersquatting); Ariz. Dream Act Coal. v. Brewer, 757 F.3d 1053, 1068 (9th Cir. 2014) ("Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages.").  Further, this is not a case in which "the public interest" would be "disserved by a permanent injunction" or where "the balance of hardships" favors the defendants.  eBay, 547 U.S. at 391.  "It is no hardship to cease intentionally infringing someone else's trademark rights."  Diller v. Barry Driller, Inc., 2012 WL 4044732, at *10 (C.D. Cal. Sept. 10, 2012).  Lastly, the proposed scope of the injunction generally is "narrowly tailored to remedy the specific harm shown."  E. Bay Sanctuary Covenant v. Barr, 934 F.3d 1026, 1029 (9th Cir. 2019) (cleaned up).

### 3. Release of Funds

As Bestway notes, part of the court's preliminary injunction included a prohibition on removing any funds from PayPal accounts used by the Infringing Sites.  Dkt. 22.  The court orders that any funds held by PayPal associated with any of the Infringing Sites, including all accounts associated with the email addresses apuninod1984@gmx.com, miaowenshi054676@hotmail.com, teodo.siefk@gmx.com, atvagrenvnxvc@sina.com, and julleak@gmx.com be turned over to Bestway in partial satisfaction of the default judgment.  In accordance with Fed. R. Civ. P. 62(a), the funds should be released 30 days after entry of the default judgment, which will allow plaintiff's counsel to serve defendants with the default judgment and permanent injunction in accordance with the court's order permitting alternative service.  Dkt. 22.  The 30-day period will also give defendants an opportunity to file any applicable challenges or appeals.

### III. CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT:

1. Plaintiff's motion for default judgment is GRANTED;

2. Plaintiff is awarded statutory damages in the amount of $20,000,000;

3. Plaintiff is granted an injunction as specified in section II(C)(2), above; and

4. PayPal is to release to plaintiff the funds frozen pursuant to this court's earlier order within 30 days after entry of judgment as partial satisfaction of judgment.

Plaintiff shall submit a revised proposed judgment and injunction that is consistent with this order within seven days.

**IT IS SO ORDERED.**

Dated: January 12, 2022

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge